**DEPARTMENT OF ENVIRONMEN-TAL QUALITY OREGON,**
Plaintiff—Appellant,

v.

**SPAR INVESTMENT COMPANY,**
et al., Defendants—Appellees.

No. 01–35939.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 2003.

Decided May 23, 2003.

---

**2.** All pending motions are denied.

Before: O'SCANNLAIN, FERNANDEZ, and FISHER, Circuit Judges.

MEMORANDUM *

The Department of Environmental Quality for the State of Oregon ("DEQ") appeals from the district court's grant of summary judgment to various owners and operators of a dry cleaning business located in Milwaukie, Oregon. Because the relevant facts are known to the parties they are not repeated here.[1]

Departing from a baseline of strict liability, *see* Or.Rev.Stat. § 465.255, the Oregon legislature in 1995 implemented a separate and distinct liability scheme for the dry cleaning industry:

> Except as provided under subsections (3), (4), and (5) of this section, no dry cleaning owner or dry cleaning operator shall be subject to any administrative or judicial action to compel a removal or remedial action or to recover remedial action costs caused by the release or threatened release of dry cleaning solvent from an active or inactive dry cleaning facility, whether the action is brought under ORS 465.200 to 465.510

and 465.900 or any other statute or regulation.

Or.Rev.Stat. § 465.503(1).

This broad grant of immunity, however, is inapplicable if "[t]he release resulted from a violation of federal or state laws in effect at the time of the release, including but not limited to waste minimization requirements imposed under ORS 465.505." Or.Rev.Stat. § 465.503(3)(b). Notwithstanding this statutory language and the owners' and operators' long history of improperly disposing perchloroethylene ("PCE") directly into the ground, the district court determined that § 465.503(3)(b) was ambiguous, and resorted to legislative history in concluding that "only dry cleaning owners and operators who do not comply with environmental laws after June 30, 1995 lose the exemption from liability allowed for in O.R.S. 465.503(1)."

We disagree. The Oregon Supreme Court has instructed that "[i]f the legislature's intent is clear from [an] ... inquiry into text and context, further inquiry is unnecessary." *Portland Gen. Elec. Co. v. Bureau of Labor and Indus.*, 317 Or. 606, 859 P.2d 1143, 1146 (Or.1993). Here, the clear import of § 465.503(3)(b) is that dry cleaning owners and operators are liable for the release of dry cleaning solvent that stemmed from conduct that violated state or federal law at the time of release.[2]

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. DEQ's motion for certification of state law questions to the Oregon Supreme Court is denied.

2. The operators argue that because § 465.503(3)(b) specifically references waste minimization requirements under § 465.505, the Oregon legislature intended that owners and operators were to receive immunity for pre–1995 state and federal law violations. But there is nothing on the face of the statutory language that suggests that § 465.505 somehow defines or limits the nature of state and federal law violations within the purview of § 465.503(3)(b). Moreover, the mere fact that § 465.505 was enacted in 1995 does not evince a legislative intent to limit liability to only post–1995 violations of environmental laws. Accordingly, the singular reference to § 465.505 does not undermine a plain meaning interpretation of § 465.503(3)(b).

Nevertheless, the owners and operators contend that a plain meaning interpretation of § 465.503(3)(b) conflicts with the stated legislative purpose of "creat[ing] a $1 million cleanup fund paid for solely by the dry cleaning industry, and ... otherwise exempt[ing] dry cleaning owners and dry cleaning operators from cleanup liability." Or.Rev.Stat. § 465.500(1)(a). But our interpretation of § 465.503(3)(b) does not render § 465.500(1)(a) meaningless.

Indeed, releases by the dry cleaning industry of spent PCE directly into the ground before the solvent was classified as a hazardous waste would not fall under § 465.503(3)(b). Neither would any PCE that leaked into the ground as a byproduct of pouring wastewater down the drain.[3] Thus, in limiting the scope of immunity afforded to the dry cleaning industry, the Oregon legislature made a perfectly reasonable determination that the cleanup fund would offset releases of PCE that were lawful at the time of release, but that owners and operators would bear further responsibility for their consciously illegal activities.[4]

We therefore conclude that nothing in the text or context of § 465.503(3)(b) supports the district court's determination that immunity is abrogated for past releases of dry cleaning solvent only when the dry cleaner has continued to violate environmental laws. Properly construed, this statutory provision was intended to subject owners and operators to liability for past releases that resulted from contemporaneous state or federal law violations.[5]

REVERSED and REMANDED.

---

3. This practice was finally prohibited in 1995 by § 465.505(1)(b), which provides: "Wastewater contaminated with dry cleaning solvents from the water separation process of dry cleaning machines may not be discharged into any sanitary sewer or septic tank or into the waters of this state."

4. Following the magistrate judge's entry of amended findings and recommendations, which the district court subsequently adopted, the Oregon legislature amended § 465.503(3) in 2001. The provision now reads: *"Notwithstanding the date on which the release occurred,"* § 465.503(1) does not apply to a dry cleaning operator if "[t]he release resulted from an action or omission that was a violation by the dry cleaning owner or dry cleaning operator of federal or state laws in effect at the time of the release, including but not limited to waste minimization requirements imposed under ORS 465.505." Or.Rev.Stat. § 465.503(3)(b) (as amended) (emphasis added). *See* Or.Rev.Stat. § 465.503(4) (applying a similar standard to dry cleaning owners). The legislature's decision to amend subsequent to commencement of litigation in this case merely reinforces our conclusion that

§ 465.503(3)(b), as originally enacted, should be interpreted in accordance with its plain meaning. *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or. 344, 703 P.2d 207, 219 n. 15 (Or.1985).

5. Alternatively, Parker and Spar Investment argue that an operator's unlawful disposal of PCE does not deprive an owner of immunity. They cite to the statutory text which provides that the immunity "provisions of subsections (1) and (2) of this section do not apply to a dry cleaning owner *or* dry cleaning operator" under certain circumstances. Or.Rev.Stat. § 465.503(3) (emphasis added). Parker and Spar Investment claim that the use of the word "or" indicates that owners may not be held liable for the past misdeeds of operators.

However, most of the provisions that exempt the industry from immunity specifically refer to a "dry cleaning owner or dry cleaning operator." *See* Or.Rev.Stat. § 465.503(3)(a) ("The release was caused by gross negligence of the *dry cleaning owner or dry cleaning operator*") (emphasis added); § 465.503(3)(c) (*"The dry cleaning owner or dry cleaning operator* willfully concealed a release of dry clean-

ing solvent ...") (emphasis added); § 465.503(3)(d) ("*The dry cleaning owner or dry cleaning operator* denies access or unreasonably hinders or delays removal or remedial action necessary at the facility") (emphasis added). If an operator engaged in gross negligence, willfully concealed a release, or unreasonably delayed a removal action, the use of the disjunctive term "or" indicates that while the operator is subject to liability, the owner's immunity remains intact.

Thus, it is quite telling that § 465.503(3)(b) does not employ the same disjunctive phrasing. *See Emerald People's Util. Dist. v. Pac. Power & Light, Co.*, 302 Or. 256, 729 P.2d 552, 559 (Or.1986) (the use of a term in one section and not in another section of the statute indicates a purposeful omission). Section 465.503(3)(b) simply states: "The release resulted from a violation of federal or state laws in effect at the time of the release ..." In the absence of language similar to § 465.503(3)(a), (c), and (d), the clear import of § 465.503(3)(b) is that dry cleaning owners and operators are both ineligible for immunity if the release of dry cleaning solvent resulted from unlawful conduct.

